# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**BRODERICK MOUTON**        **CASE NO. 6:18-CV-00484**

**VERSUS**        **JUDGE ROBERT R. SUMMERHAYS**

**USA**        **MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Currently pending is a motion to dismiss [Rec. Doc. 9], pursuant to Federal Rule of Civil Procedure 12(b)(1), filed by the United States of America ("the Government"), in which the Government seeks to dismiss the plaintiff's claims to the extent he seeks to recover an amount in excess of the sum certain identified in his administrative claim, which was $96,312.44. The plaintiff, Broderick Mouton, filed an opposition [Rec. Doc. 11], to which the Government replied [Rec. Doc. 12]. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. An evidentiary hearing was held on September 20, 2018. [Rec. Docs. 14, 18]. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be DENIED.

## BACKGROUND

This case arises out of an automobile accident which occurred on June 17, 2014, in Lafayette, Louisiana, and involved the plaintiff, Broderick Mouton, and an

employee of the Department of Transportation, Federal Aviation Administration ("FAA"), Glenn W. Meier. The plaintiff alleges that he was operating his 1984 Cadillac Eldorado in a lawful manner, traveling east on North University Avenue, when his vehicle was struck on the passenger side by a 2013 Dodge Dart, driven by Mr. Meier, who was acting in the course and scope of his employment with the FAA.[1] As a result of the accident, the plaintiff alleges that he sustained injuries to his neck, back and head. On April 10, 2018, the plaintiff commenced this lawsuit, by filing a complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.[2] The Government denies liability. In the instant motion, the Government seeks to limit the plaintiff's claim, which is alleged in the instant complaint to be not less than $750,000.00, to the sum certain stated in the administrative proceeding, which was $96,312.44.[3]

On June 17, 2014, the plaintiff was transported from the scene of the accident by an ambulance and taken to Regional Medical Center of Acadiana, at which time he complained of neck and back pain.[4] During the evidentiary hearing, the plaintiff testified that he began treating with Dr. Thomas K. Bond, M.D., at Total Care Health & Wellness Medical Center, for neck and back pain, within a couple of weeks of the

---

[1] Rec. Doc. 1, p. 2, ¶ 4 and p. 3, ¶ 7.
[2] Rec. Doc. 1.
[3] Rec. Doc. 1, p. 4, ¶¶ 10-11; Rec. Docs. 9, 9-2, and 11-1.
[4] Rec. Doc. 18, p. 21; Rec. Doc. 11-3, p. 4.

accident.[5] In October 2014, Dr. Bond ordered an MRI of the plaintiff's neck and back.[6] Over the course of approximately two years of treatment, up to and including the date on which the plaintiff submitted his administrative claim to the FAA, Dr. Bond recommended that the plaintiff undergo a series of bilateral facet joint injections.[7] It was the plaintiff's understanding, based on Dr. Bond's medical advice and recommendation, that these injections would resolve the pain, such that there was no medical reason to refer the plaintiff to a spine surgeon.[8] The plaintiff underwent facet joint injections "at the end of 2016."[9]

Pursuant to the FTCA, the plaintiff presented his administrative claim to the FAA, on June 10, 2016, via Standard Form 95 ("SF 95").[10] On the SF 95, the plaintiff alleged that he had sustained "[i]njuries to the muscles, ligaments and soft tissues of the claimant's neck, mid-back and lower back[,]" for which he claimed damages in

---

[5] Rec. Doc. 18, p. 21. The record does not contain comprehensive medical records from Dr. Bond prior to 2016; however, Dr. Bond's records do note that he has been treating the plaintiff since at least July 2014. *See* Rec. Docs. 9-6; 15-1; and 16-1.

[6] Rec. Doc. 18, p. 19.

[7] Rec. Docs. 18, pp. 19-20, 21-22; and 15-1. During the evidentiary hearing, on offer of the plaintiff and over the Government's objection, the undersigned admitted a signed note, dated September 18, 2018, by Dr. Bond, attached to which were additional, May 2016 records from Dr. Bond. (*see* Rec. Doc. 15-1 (exhibit); and Rec. Doc. 18, p. 12, ll 14-15, and p. 13, ll 9-15 (exhibit admitted)). There was some confusion as to the substance of the exhibit vis-à-vis other exhibits in the record. (Rec. Doc. 18, pp. 11-12). Although the Government had attached to the instant motion some records kept by Dr. Bond, the records submitted during the hearing, by both the plaintiff and the Government, constituted additional records. *See* Rec. Docs. 15-1 (plaintiff's exhibit); and 16-1 (Government's exhibit).

[8] Rec. Doc. 18, p. 20; Rec. Doc. 15-1, p. 1.

[9] Rec. Doc. 18, p. 20.

[10] Rec. Doc. 9-2; Rec. Doc. 11-1.

the amount of $88,227.05, and property damage to his automobile in the amount of $8,085.39, totaling the sum certain of $96,312.44.[11] The SF 95 was submitted to the FAA under a cover letter, signed by the plaintiff's counsel of record, Bret C. Beyer, Sr., in which Mr. Beyer explains, *inter alia*, the plaintiff's past medical expenses and his intention to "undergo a series of three (3) bilateral facet joint injections at the C4-5 through C7-T1 levels of his cervical spine[.]"[12] Mr. Beyer further explained that these injections "were the last step in trying to treat Mr. Mouton's neck and upper back pain conservatively[;] [t]he sum certain figure set forth in this claim necessarily assumes that these injections will be successful in finally resolving the symptoms caused by the accident, and that no other substantive treatment will be necessary."[13] Mr. Beyer's letter concludes by stating that, "in the event the injections fail, and additional substantive medical treatment becomes necessary, Mr. Mouton reserves all rights to seek damages in excess of the amount claimed here."[14]

Several months after the filing of the SF 95, when the plaintiff did not improve as expected in response to conservative treatment, Dr. Bond ordered additional MRI scans of the plaintiff's back and neck, and then referred the plaintiff to Dr. John Sledge, an orthopedic spine surgeon.[15] The plaintiff first saw Dr. Sledge on January

---

[11] Rec. Doc. 9-2, p. 1; Rec. Doc. 11-1, p. 1.
[12] Rec. Doc. 11-3, p. 4.
[13] *Id.*
[14] *Id.*
[15] Rec. Doc. 18, pp. 22-23; Rec. Doc. 11-2 (Dr. Sledge's records).

16, 2017, "for complete orthopaedic evaluation and discussion of his treatment options" for neck and back pain.[16] Dr. Sledge noted that the plaintiff had received "multiple cervical injections" through his treatment with Dr. Bond and had "denie[d] any significant relief."[17] The plaintiff returned to Dr. Sledge on March 13, 2017, at which time Dr. Sledge recommended continued conservative treatment, including physical therapy, nerve conduction testing and consultation with a neurologist for post-concussion syndrome.[18] Later, during the plaintiff's July 18, 2018 visit, and after consideration of October 2017 EMG/NCV studies conducted by neurologist Dr. Weir, Dr. Sledge noted that the plaintiff may be a surgical candidate.[19] During the hearing on the instant motion, the plaintiff confirmed that this was the first time that he ever understood surgery to be a possible option, given the worsening of his condition.[20]

## LAW AND ANALYSIS

### I.    STANDARD FOR RESOLVING A RULE 12(b)(1) MOTION TO DISMISS

A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court.[21] Under Rule 12(b)(1), a claim is "properly dismissed for lack

---

[16] Rec. Doc. 11-2, pp. 11-12.
[17] *Id*. at p. 15.
[18] Rec. Doc. 11-2, pp. 6-10; Rec. Doc. 18, p. 23.
[19] Rec. Doc. 18, pp. 20, 23; Rec. Doc. 11-2, pp. 1-5.
[20] Rec. Doc. 18, p. 28.
[21] *See* Fed. R. Civ. P. 12(b)(1).

of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.[22]

"Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[23] "A motion to dismiss for lack of subject-matter jurisdiction should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."[24]

## II.   LIMITATIONS UNDER THE FTCA

The FTCA acts as a limited waiver of sovereign immunity for tort claims against the Government and sets out a procedure for adjudicating those claims.[25] Pursuant to 28 U.S.C. § 1346(b)(1), "district courts . . . have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private

---

[22] *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

[23] *In re FEMA Trailer Formaldehyde Products Liability Litigation (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[24] *Id.* (citing *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

[25] *United States v. Kwai Fun Wong*, ___ U.S. ___ , 135 S. Ct. 1625, 1639 (2015).

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[26] The court therefore has jurisdiction over the plaintiff's complaint; however, the instant motion challenges the extent of that jurisdiction.

Under 28 U.S.C. § 2675(a),

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.[27]

Thus, "[p]resentment of a claim to the appropriate agency and denial of that claim by the agency[,]" whether in writing or by failure to timely dispose of the claim in accordance with § 2675(a), "are prerequisites to a tort suit brought against the United States."[28] Under 28 C.F.R. § 14.2(c), "[a] claim . . . may be amended by the claimant

---

[26] 28 U.S.C. § 1346(b)(1).
[27] 28 U.S.C. 2675(a); *see also* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.").
[28] *Flory v. United States*, 138 F.3d 157, 159 (5th Cir. 1998).

at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. 2675(a)."[29]

Here, the plaintiff presented his claim, via SF 95, on June 10, 2016, and did not thereafter submit an amended claim prior to filing the complaint herein.[30] At the time the plaintiff filed his complaint on April 10, 2018, the FAA "ha[d] never accepted or denied the claim[;]"[31] however, attached to the instant motion is the FAA's denial, dated six days after the filing of the complaint, or April 16, 2018.[32] According to § 2675(a), once six months passed from presentment of the administrative claim, the plaintiff had the option of deeming the FAA's failure to timely dispose of his claim as a final disposition at that time or "any time thereafter."[33] The Government does not dispute, for purposes of the instant motion, that the administrative claim was timely presented and, further, that the complaint was then timely filed on April 10, 2018.

---

[29] 28 C.F.R. § 14.2(c).

[30] Curiously, the Government closes its brief by referencing an "amended claim [the plaintiff] filed with the FAA." Rec. Doc. 9-1, p. 8. However, the sum certain referenced in connection therewith is the same amount ($96,312.44) submitted in the only version of the SF 95 of which this Court is aware.

[31] Rec. Doc. 1, p. 2, ¶ 3. The undersigned notes that both the complaint and the plaintiff's attorney's cover letter to the FAA appear to misstate the date of the SF 95 as June 10, *2015*. *See* Rec. Doc. 1, p. 2, ¶ 3 (complaint); and Rec. Doc. 11-3, p. 1 (date noted on plaintiff's attorney's cover letter, submitted contemporaneously with the SF 95). However, the SF 95 itself was signed and dated, by the plaintiff, on June 10, *2016* (Rec. Docs. 9-2 and 11-1), which date is referenced in the instant briefing from both parties (*see* Rec. Docs. 9-1, p. 2; 11, p. 2; and 12, p. 3).

[32] Rec. Doc. 9-5.

[33] *See* 28 U.S.C. 2675(a).

The Fifth Circuit has "held that timely presentation of a claim including 'a sum certain' is a jurisdictional requirement, absent compliance with which the courts have no jurisdiction to entertain the suit under the [FTCA]."[34] "The asserted justification for this holding is that it furthers statutory goals of settlement determinations and efficient processing of claims by agencies."[35]

The FTCA explicitly provides for both the general requirement limiting a claim to the amount presented to the agency, as well as two exceptions to the administrative claim limit. Pursuant to 28 U.S.C. § 2675(b),

> [a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.[36]

"The plaintiff in an FTCA suit who seeks to exceed his administrative claim has the burden to show that the addition is based on newly discovered evidence or intervening facts within the meaning of § 2675(b)."[37] "To satisfy this burden, the

---

[34] *Martinez v. United States*, 728 F.2d 694, 697 (5th Cir. 1984) (quoting *Wardsworth v. United States*, 721 F.2d 503, 505–06 (5th Cir. 1981)); *see also* 28 C.F.R. § 14.2(a) (For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury. . . alleged to have occurred by reason of the incident[.]").
[35] *Id.*
[36] 28 U.S.C. § 2675(b).
[37] *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002).

plaintiff must show that the evidence was not 'reasonably capable of detection at the time the administrative claim was filed.'"[38] "In other words, 'the information must not have been discoverable through the exercise of reasonable diligence.'"[39]

In the Fifth Circuit, "new information cannot surmount the bar created by § 2675(b) if the information merely concerns the precision with which the nature, extent, or duration of a claimant's condition can be known."[40] "Information can be newly discovered evidence or an intervening fact, however, if it sheds new light on the basic severity of the claimant's condition—that is, if it materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed."[41] "Requiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case[,]" which "encourages settlement of FTCA cases in accordance with the statute's purposes."[42]

## III.   PLAINTIFF IS ENTITLED TO PRESENT EVIDENCE AT TRIAL OF THE SUM CERTAIN AS INCREASED HEREIN

In support of the instant motion, the Government correctly notes that, in the Fifth Circuit, "Mr. Mouton must prove any claimed increase in the 'sum certain' is

---

[38] *Id.* (quoting *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986)).
[39] *Id.*
[40] *Lebron*, 279 F.3d at 330 (citing *Low*, 795 F.2d at 470-71).
[41] *Lebron*, 279 F.3d at 330 (citing *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985), cited in *Low*, 795 F.2d at 470)).
[42] *Lebron*, 279 F.3d at 330 (citing *Low*, 795 F.2d at 470-71, and *Reilly v. United States*, 863 F.2d 149, 172–73 (1st Cir. 1988)).

based upon 'newly discovered evidence' or 'intervening facts' within the meaning of 28 U.S.C. § 2675(b)."[43] Relying on the Fifth Circuit's decisions in *Dickerson ex rel. Dickerson v. United States*, and *Low, supra*, the Government argues that the court must, first, determine "whether the specific injuries were known at the time the administrative complaint was made[,]" and second, determine whether the plaintiff "could have made out [his] worst case scenario based on the basic severity of the injuries that were known."[44] As the plaintiff notes, the second prong of the analysis requires that the evidence support the increase in the prayer over the administrative claim, and further, that the newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative complaint was made.[45]

Applying this two-part test, the Government argues, first, that the plaintiff's specific injuries were known at the time he submitted his SF 95, given that he had "repeatedly sought medical attention for his lumbar spine area and underwent extensive medical testing and injections."[46] Noting an October 19, 2016 reference made by Dr. Bond during the plaintiff's visit that date, that the plaintiff "has not been the same" since a fall in his backyard, the Government argues that said fall

---

[43] Rec. Doc. 9-1, p. 6 (citing *Lebron*, 279 F.3d at 330).
[44] *Id.* (quoting *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002); *see also Low*, 795 F.2d at 470).
[45] Rec. Doc. 11, p. 8 (citing *Dickerson*, 280 F.3d at 475-76).
[46] Rec. Doc. 9-1, p. 7.

"[c]learly . . . constitutes an intervening cause and any exacerbation of his pain complaints would be unrelated to the automobile accident made subject of this lawsuit."[47] The plaintiff responds by arguing that, at the time the administrative claim was filed, MRI scans indicated to the plaintiff's treating physician, Dr. Bond, that conservative treatment would resolve his injuries, such that surgery had not been, and was unlikely to be, recommended.[48] As such, while the general area of injury, *i.e.* back and neck, was known, the later MRI and testing results, combined with the plaintiff's failure to respond to conservative treatment, arguably shed new light on the basic severity of the claimant's condition, leading Dr. Sledge to recommend surgery.

As to the second prong, the Government contends that, at the time the administrative claim was filed, "[a] reasonable worst case scenario [wa]s that surgery or pain management treatment w[ould] be required."[49] In arguing that surgery was "not . . . an unexpected outcome," the Government points only to the cover letter, submitted with the plaintiff's SF 95, in which the Government argues that plaintiff's counsel "projected" that the plaintiff may require additional substantive treatment if conservative measures failed.[50] The plaintiff responds that

---

[47] *Id*. (citing Rec. Doc. 9-6).
[48] Rec. Doc. 11, pp. 7-8.
[49] Rec. Doc. 9-1, p. 7.
[50] Rec. Doc. 12, p. 3.

the necessity of surgery, or the severity of the plaintiff's injuries, was not reasonably discoverable at the time the administrative claim was filed, because neither the plaintiff nor Dr. Bond knew, or reasonably anticipated, that his condition would fail to respond to conservative treatment. Further, although the evidence did not support an increase in the sum certain at the time the administrative claim was filed, as indicated in the then-available medical records and treatment, the plaintiff argues that the increase is now warranted and supported by medical evidence in the form of Dr. Sledge's surgery recommendation.

In assessing the applicability of § 2675(b)'s exceptions for "newly discovered evidence" or "intervening facts," the undersigned notes, as have district courts in the Eastern District of Louisiana, that "the *Lebron* and *Dickerson* courts considered these two tests together."[51] It appears that "the difference [between the two tests], if any, is only slight."[52] "Regardless of the exact meaning, the Fifth Circuit is clear that '[i]nformation can be newly discovered evidence or an intervening fact if it sheds new light on the basic severity of the claimant's condition.'"[53]

Here, the issue is presented to the court on a Rule 12(b)(1) motion to dismiss. As noted above, "[a] motion to dismiss for lack of subject-matter jurisdiction should

---

[51] *D'Antoni v. Fed. Emergency Mgmt. Agency*, No. 07-615, 2008 WL 417701, at *4 (E.D. La. Feb. 13, 2008) (citing *Lebron,* 279 F.3d at 330-31; *Dickerson*, 280 F.3d at 475-77); *see also Singletary v. United States*, No. 05-4000, 2006 WL 3240769 (E.D. La. Nov.6, 2006); *Scallan v. United States*, No. 00-3349, 2004 WL 102500 (E.D. La. Jan.22, 2004).
[52] *D'Antoni*, 2008 WL 417701, at *4.
[53] *D'Antoni*, 2008 WL 417701, at *5 (quoting *Lebron*, 279 F.3d at 330).

only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief."[54] A review of the record, including the plaintiff's medical records submitted by both parties in connection with the instant motion and hearing thereon, undermines the Government's position, at least at this stage in the litigation. The Government invites the court to find that surgery was "not . . . an unexpected outcome," based solely on an attorney's reservation of rights, and in conflict with all medical records. Then, somewhat contradicting its argument that surgery was expected to follow the post-accident treatment, the Government urges the court to further find that a later fall in the plaintiff's backyard "[c]learly . . . constitute[d] an intervening cause," implying that any related pain or exacerbation is legally unrelated to the accident at issue herein.[55] The latter has no place in a Rule 12(b)(1) motion to dismiss and has no bearing on the issues currently before the Court. As to the former, the medical evidence in the record does not support the Government's position that surgery was a reasonable worst case scenario at the time the plaintiff submitted the SF 95. To the contrary, it would be unreasonable to assume that surgery would be necessary when the plaintiff's treating physician, with the benefit of MRI and other testing, was not recommending it nor did he believe that it would later prove to be necessary.

---

[54] *Id.* (citing *Wagstaff v. United States Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).
[55] Rec. Docs. 12, p. 3 and 9-1, p. 7.

As recognized above, the Fifth Circuit has emphasized that the justification for requiring the timely presentation of a sum certain is that doing so "furthers statutory goals of settlement determinations and efficient processing of claims by agencies."[56] The Fifth Circuit has also explained that "[r]equiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case[,]" which "encourages settlement" thereof.[57] However, the jurisprudential requirement that a plaintiff guard against his worst case scenario cannot be read to require an administrative claim to state a sum certain for which there is no evidentiary or medical basis. The undersigned finds that a bright-line rule which would require a claimant, such as this plaintiff, to submit a sum certain for a worst case scenario not based on medical evidence, and in fact contrary to the advice of the relevant treating physicians, would, at best, constitute bad policy and, at worst, constitute an invitation for frivolous administrative claims that would ultimately lead to the filing of frivolous federal lawsuits, in violation of Federal Rule of Civil Procedure 11(b).[58] Frivolous claims, lacking any serious value, would not further settlement determinations or efficient processing of claims by agencies.

---

[56] *Martinez, supra*, 728 F.2d at 697. The undersigned notes that the plaintiff's attorney readily admits that, had the FAA attempted to settle the plaintiff's claim on the basis of the sum certain claimed in the SF 95, "before the plaintiff's condition was revealed to be more severe, the plaintiff would have been at a disadvantage." Rec. Doc. 11, p. 9.

[57] *Lebron*, 279 F.3d at 330 (citing *Low*, 795 F.2d at 470-71, and *Reilly*, 863 F.2d at 172–73).

[58] *See* Rec. Doc. 18, pp. 34-36.

The undersigned's review of the Fifth Circuit and other district court cases cited herein indicates that a majority of those cases involved trials on the merits, at least on the issue of damages if not liability and damages. For example, both *Low* and *Lebron*, two medical malpractice cases involving injuries to infants during childbirth which were "practically indistinguishable," involved reversals of multi-million dollar judgments, which exceeded the administrative claims and were made after trial on the merits.[59] In *Lebron*, "as in *Low*, the basic severity of the child's condition was known and recited in the claim form[,]" such that "[a] reasonable worst-case prognosis would have predicted what actually came to pass."[60] Additionally, *United States v. Alexander*, cited by the plaintiff, underscores that the questions presented herein require a trial court to assess whether "there was either newly discovered evidence *not reasonably discoverable* at the time of presenting the administrative claim or the allegation *and proof* of intervening facts relating to the amount of the claim."[61] On the facts of this case and the showing made by the plaintiff, such assessments should be properly weighed by the trial court.

Based on the record before this Court, the evidence and testimony presented during the hearing, and the arguments of the parties, the undersigned finds that it would be inappropriate, at this stage, to limit the plaintiff to the sum certain stated

---

[59] *Lebron*, 279 F.3d at 331; *Low*, 795 F.2d at 470.
[60] *Id*. (citation omitted).
[61] *United States v. Alexander*, 238 F.2d 314, 317 (5th Cir. 1956) (emphasis added).

in his administrative claim. As the *D'Antoni* court stated, "[t]oday's holding does not dispose of this issue . . . [t]he parties should present evidence at trial," at which point the trial court will be able to weigh the evidence and testimony in deciding whether, and to what extent, any newly discovered evidence or intervening facts was or was not reasonably discoverable at the time the plaintiff filed his administrative claim.[62]

## CONCLUSION

For the foregoing reasons, this Court recommends that the Government's motion to dismiss (Rec. Doc. 9) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

---

[62] *See D'Antoni*, 2008 WL 417701, at *5.

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[63]

Signed in Lafayette, Louisiana on October 23, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[63] *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).